**Daraleen DEAN, Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF LABOR, Respondent and Appellee,**

and

**Pennington County Auditor's Office, Employer and Appellee.**

**No. 14735.**

Supreme Court of South Dakota.

Considered on Briefs March 6, 1985.

Decided May 15, 1985.

Tamatane Aga, Jr., Black Hills Legal Services, Inc., Rapid City, for appellant.

Drew E. Johnson, Sp. Asst. Atty. Gen., Dept. of Labor, Unemployment Ins., Aberdeen, for respondent and appellee.

Gregg A. Gass, Deputy States Atty., Rapid City, for employer and appellee.

FOSHEIM, Chief Justice.

Daraleen Dean (Dean) appeals from the judgment of the trial court affirming the Secretary of Labor's decision denying her unemployment insurance benefits. We affirm.

Dean's employment as a clerk typist from the Pennington County Auditor's Office terminated on July 1, 1983 because of two shoplifting incidents. Dean started working in the Pennington County Auditor's office in September, 1961. She was a clerk typist until 1980 when she was promoted to a deputy clerk. In both positions she helped to process vouchers, tax receipts, tax abatements and county poor relief documents. As a deputy auditor, she

also had authority to certify documents for filing and recording in the register of deeds office. The auditor's office annually serviced vouchers, cash and checks amounting to over forty million dollars.

The first shoplifting incident occurred in 1981 and the second in 1982. Dean entered a plea of *nolo contendere* to the 1981 charge, and was found guilty. The court suspended imposition of sentence and placed her on probation. Shortly thereafter, the County Auditor demoted Dean to her former position as clerk typist with a warning that this conduct jeopardized her job because it put in question whether she could continue to effectively do the required work.

In December of 1982, Dean was arrested and again charged with shoplifting. She then resigned and took her retirement. The second shoplifting charge was dismissed. Dean testified the latter incident was similar to the first, and that at both times she simply forgot to pay for the item, and did not intend to shoplift. Both incidents occurred while Dean was off-duty.

Dean had not been known to commit any acts of dishonesty at work and during the time period between the shoplifting incidents she had health problems and was taking medication. The County Auditor testified that Dean was terminated because the shoplifting incidents involved conduct which did not satisfy the high standard of public trust, reliability and honesty required of workers in that office. The auditor's office, however, had no official written policies in force governing the off-duty conduct of employees.

The unemployment insurance division of the South Dakota Department of Labor found that claimant was discharged

by being allowed to retire in lieu of being fired.[1] Dean's separation from work was accordingly considered by the Secretary and the trial court as being a discharge from employment by the employer. The State does not seek review of this conclusion. On a similar record, in *Matter of Yaroch*, 333 N.W.2d 448, 449 (S.D.1983), we concluded it was therefore not an issue on appeal. We also now hold.

Dean applied for, and was denied, unemployment insurance benefits. From that denial, she requested a hearing. The appeal referee, before whom the hearing was conducted, affirmed the initial determination. From the referee's decision, Dean appealed to the Secretary of the Department of Labor. The Secretary affirmed, adopted, and incorporated by reference, all of the referee's findings of fact and conclusions of law. From the Secretary's decision, Dean appealed to the circuit court. The circuit court upheld the decision of the Secretary with the additional finding that Dean's conduct violated a work rule. The court entered a Judgment affirming the denial of benefits. The Judgment also incorporated the court's memorandum decision, the Department of Labor's decision and the findings of fact and conclusions of law of the appeal referee.

The issue presented is whether Dean was properly denied unemployment insurance benefits because of a discharge for misconduct connected with her employment pursuant to SDCL 61–6–14.[2]

*In Matter of Yaroch, supra,* we adopted the definition of misconduct expressed in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941):

> [M]isconduct [within the meaning of the unemployment compensation statutes] is

---

1. The record, however, is not clear whether Dean is seeking unemployment insurance compensation in addition to retirement benefits.

2. SDCL 61–6–14 provides:

   An unemployed individual who was discharged or suspended from his most recent employment, such employment being at least thirty calendar days in duration for misconduct connected with his work shall be denied benefits

until he has been reemployed at least six calendar weeks in insured employment during his current benefit year and earned wages of not less than his weekly benefit amount in each of those six weeks. When additional claims are filed by a claimant during a benefit year subsequent to employment, the thirty calendar day requirement shall not be applied in determining qualifications.

limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.[3]

*Yaroch*, 333 N.W.2d at 449.

■ Unemployment compensation benefits and mandatory unemployment insurance are creatures of statute, unknown to the common-law. They are a product of the great depression. Their purpose is to lighten the burden of involuntary unemployment, Sec. 2, ch. 3 (Special Session) 1936 Session Laws, and should be liberally construed in favor of the claimant to afford all the relief the legislature intended to grant. However, the courts may not exceed the limits of statutory intent. *Red Bird v. Meierhenry*, 314 N.W.2d 95 (S.D. 1982).

■ It is generally recognized that an employee continues in his off-duty hours to be under the duty to have regard for his employer's interest, observe the rules laid down by the employer in connection with the proper conduct of his business, and to honor the standards of behavior which the employer has a right to expect of an employee. If the violation of any of these requisites during the employee's off-duty hours leads to his discharge, unemployment compensation benefits may be denied to him for misconduct connected with the work. 89 A.L.R.2d 1090 § 2.

■ There is off-duty behavior which the interests of a County Auditor's office rightfully expects of employees. Every deputy and clerk in a county office is required by SDCL 7-7-21 to take an oath or affirmation required by our Constitution that he will faithfully discharge the duties of that office. When these duties involve access to large sums of public funds they require a high degree of honesty and public trust. Their faithful discharge accordingly demands a standard of conduct which is incompatible with off-duty acts of dishonesty. An employer, be he public or private, has the right to expect his employees to refrain from acts which would reflect on the business name or the office. *O'Neal v. Employment Security Agency*, 89 Idaho 313, 404 P.2d 600 (1965). There is no merit to an argument that simply because an act of misconduct relates to the private life of an employee, it is essentially not connected with his employment. The fundamental issue is whether the result of the misconduct adversely affects the employee's ability and capacity to perform his duties to an appreciable degree. 76 Am.Jur.2d, Unemployment Compensation, § 57 pg. 953; *Grimble v. Brown*, 247 La. 376, 171 So.2d 653, *cert. den.* 382 U.S. 861, 86 S.Ct. 123, 15 L.Ed.2d 99 (1965).

---

3. Chapter 337 of the Session Laws of 1984, codified as SDCL 61-6-14.1, now statutorily defines misconduct:

As used in this chapter, misconduct is:
(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or
(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or
(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or
(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design.

However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, or a good faith error in judgment or discretion is not misconduct.

Dean relies on *Giese v. Employment Division*, 27 Or.App. 929, 557 P.2d 1354 (1976) in support of her position. In *Giese*, the court held that a college professor's conviction for conspiracy to destroy campus government buildings was not misconduct connected with his work. The court stated that the employer must, in order to show that the conduct is connected with work and grounds for denying unemployment compensation, point to some breach of rule or regulation that has a reasonable relation to the conduct of the employer's business. We fail to find solace for Dean from that case. After the first shoplifting incident, she was clearly made aware by both demotion and admonition that off-duty shoplifting was an unacceptable breach of conduct expected of employees in that office. In *Yaroch, supra*, we held that an employee should reasonably be aware that he invited termination if he disregarded his supervisor's admonitions.

Dean also urges that the shoplifting incidents were the result of illness consisting of progressive disorientation, forgetfulness and nervousness which caused inability to remember whether she paid for the items. The forums which heard and considered the testimony did not find that her health problems excused the misconduct.[4] Appellant's proposed Findings of Fact and Conclusions of law to that effect were declined by the circuit court.[5] We cannot conclude the decision was clearly erroneous.

The judgment is affirmed.

WOLLMAN, J., and WUEST, Circuit Court Judge Acting as a Supreme Court Justice, concur.

MORGAN and HENDERSON, JJ., dissent.

HENDERSON, Justice (dissenting).

I dissent. The South Dakota Department of Labor and the trial court have erred as a matter of law. Their decisions should be accordingly reversed.

Appellant was a hardworking, faithful employee of the Pennington County Auditor's Office for approximately 22 years. Appellant developed high blood pressure, hypertension, reactive depression, and was placed upon medication by a psychiatrist and a physician. The Pennington County Auditor knew that appellant had health and mental health problems. As a result of a shoplifting incident, appellant was demoted to a clerk-typist position. This had absolutely nothing to do with her work. Approximately one and one-half years later, appellant was charged with a second shoplifting incident which arose during a vacation. After the vacation, appellant was placed on sick leave and the Pennington County Auditor advised her to seek psychiatric counseling, which she did.

After the psychiatric counseling and treatment, appellant sought to return to her job but was advised by the Pennington County Auditor that she was being discharged, but would be allowed to use her remaining sick leave and vacation time. There was nothing to ever suggest that appellant was dishonest in her employment or that she was anything but a good, faithful employee. No acts of dishonesty were ever attributed to her in her capacity as a deputy clerk. The County Auditor discharged appellant believing that the shoplifting charges involved moral turpitude and the employees in the County Auditor's Office were held to standards of public trust and honesty. There were no policies in force governing off-duty conduct of employees during nonworking hours. There were no policies in force governing on-duty conduct, such as regulations pertaining to public trust and honesty. Were there, or had there been, the fact still remains that appellant always displayed hon-

---

**4.** The appeals referee found that before the second incident, the claimant appeared nervous and had been taking medication and was suffering from high blood pressure and depression.

**5.** The memorandum decision of the trial court noted that Dean was advised to take sick leave because of medication for blood pressure, hypertension and reactive depression and that she was hospitalized in the psychiatric ward from January 11, 1983 to January 28, 1983.

esty and upheld public trust in the discharge and performance of her employment duties.

The entire issue is whether or not appellant is entitled to unemployment insurance benefits. The issue is not whether appellant should have been discharged from her employment. Appellant has been discharged and she is not appealing from that decision. The question is whether appellant was discharged from the Auditor's Office for misconduct connected with her work for unemployment compensation insurance purposes.

It is undisputed, under the facts, that there was no misconduct by appellant concerning her duties while she attended to her work. It is absolute error for the trial court and the South Dakota Department of Labor to hold that two shoplifting incidents were misconduct connected with appellant's work. SDCL 61–6–14 is the governing statute and it provides:

> An unemployed individual who was discharged or suspended from his most recent employment, such employment being at least thirty calendar days in duration *for misconduct connected with his work* shall be denied benefits until he has been reemployed at least six calendar weeks in insured employment during his current benefit year and earned wages of not less than his weekly benefit amount in each of those six weeks. When additional claims are filed by a claimant during a benefit year subsequent to employment, the thirty calendar day requirement shall not be applied in determining disqualifications. (Emphasis supplied mine.)

The South Dakota Department of Labor and the trial court disqualified appellant from receiving her unemployment compensation benefits because she was discharged for being charged and arrested in two shoplifting incidents, *both occurring during nonworking hours and away from her place of employment.*

We have no right to rewrite the unemployment insurance statutes of this state. *See Chamberlin v. Dep't of Employment Security,* 136 Vt. 571, 396 A.2d 140 (1978); *Przekaza v. Dep't of Employment Security,* 136 Vt. 355, 392 A.2d 421 (1978). The provision speaks for itself. *Petition of Famous Brands, Inc.,* 347 N.W.2d 882 (S.D. 1984). It is improper for the South Dakota Department of Labor to interpret an unemployment compensation statute to make eligibility requirements more restrictive than intended by the plain language enacted by the legislature. *Red Bear v. Cheyenne River Sioux Tribe,* 336 N.W.2d 370 (S.D. 1983). The South Dakota Department of Labor's interpretation of the terms "misconduct connected with his work," as specified in SDCL 61–6–14, cannot exceed the limits of the statutory intent. *Red Bird v. Meierhenry,* 314 N.W.2d 95 (S.D.1982).

I am authorized to state that Justice MORGAN joins in this dissent.