**In the Matter of the Unemployment Compensation Claim of Joseph KOTRBA.**

**No. 15624.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 4, 1987.

Decided Jan. 20, 1988.

John R. Steele of Steele Law Office, P.C., Plankinton, for appellant Kotrba.

Drew C. Johnson, Dept. of Labor, Unemployment Compensation Div., Aberdeen, for appellee State of South Dakota.

Carl J. Koch, Mitchell, for appellee City of Mitchell.

MORGAN, Justice (on reassignment).

Joseph Kotrba (Kotrba) appeals from a judgment of the trial court, which affirmed the decision of the Department of Labor (Department), which denied him unemployment insurance benefits. We reverse.

Kotrba was an employee of the City of Mitchell (City), working as a "traffic-man," maintaining City's street and traffic signs. He worked under the supervision of the chief of police. For several years prior to his discharge, Kotrba had also been engaged in the off-duty business of tree cutting and trimming. During all times pertinent, a city ordinance required that all persons so engaged had to have an arborist's license and carry liability insurance. The ordinance also prescribed a maximum fine of $100 and vested the responsibility for enforcement in the city forester. Kotrba had neither the license nor the insurance. When the chief of police learned of this deficiency he gave Kotrba a written reprimand, dated March 26, 1984, warning Kotrba that his continued disregard for City's rules and policies as set out in the ordinance could result in the termination of his employment.

In the Spring of 1985, Kotrba, in disregard of the warning, again engaged in the tree-trimming business without the requisite license and insurance. Upon learning of this, the chief of police discharged Kotrba, based solely upon Kotrba's violation of the tree-trimming ordinance and not on any other events related to his employment with City. The propriety of his discharge is not before us on this appeal.

Kotrba subsequently filed a claim for unemployment insurance benefits, which were denied following a hearing. The appeals referee ruled that Kotrba had been discharged for work-connected misconduct and was therefore ineligible for benefits under the provisions of SDCL 61–6–14. The referee's decision was affirmed on appeal by the Secretary of Labor and the circuit court for the Fourth Judicial Circuit. Thus, this appeal results.

The sole issue presented is whether Kotrba was discharged from his employment for misconduct connected with his work, within the meaning of SDCL 61–6–14, thus disqualifying him from receiving unemployment insurance benefits.

■ SDCL 61–6–14 states, in pertinent part: "An unemployed individual who was discharged ... for misconduct *connected with his work* shall be denied benefits...." (Emphasis added.) In conjunction with the foregoing statute it is necessary to note the provisions of SDCL 61–6–14.1 which provides:

As used in this chapter, misconduct is:

(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design.

However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, or a good faith error in judgment or discretion is not misconduct.

Kotrba does not deny that his actions constituted misconduct. He argues that, inasmuch as his tree-trimming activities had nothing to do with his employment by City, such misconduct cannot be used as a basis for denial of unemployment insurance benefits. With that contention we agree.

We first examine our scope of review. At all stages of the proceedings, the parties proceeded under a stipulation of facts. When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable.

When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous. *Permann v. Department of Labor,* 411 N.W.2d 113 (S.D.1987). As this case comes to us on stipulated facts, we are free to fully review the same.

Initially we also note that we have repeatedly held that "since the purpose of unemployment compensation benefits is to relieve the stress of economic insecurity due to unemployment, the unemployment compensation statutes should be liberally construed in favor of the claimant to afford all the relief the legislature intended to grant." *Red Bird v. Meierhenry,* 314 N.W.2d 95, 96 (S.D.1982).

We have also distinguished between grounds for discharge of an employee and grounds for denial of unemployment benefits. *In The Matter of the Appeal of White,* 339 N.W.2d 306, 307 (S.D.1983), we held that, "[w]hile absence from work for illness may justify an employer in discharging an employee, such absence does not amount to willful misconduct precluding payment of unemployment compensation."

With but two exceptions it is unnecessary to review the few decisions wherein we have discussed the definition of misconduct, inasmuch as they have dealt with activities that were clearly work connected. We first defined "misconduct" in *The Matter of Yaroch,* 333 N.W.2d 448 (S.D.1983), when we adopted the definition of the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). That definition was adopted by the legislature by enactment of SDCL 61–6–14.1, quoted above. In both the *Yaroch* and *Boynton Cab* cases, the issues involved clearly work-connected actions or failures to act on the part of the employees. Nor does the legislative enactment indicate otherwise.

In *Dean v. South Dakota Department of Labor,* 367 N.W.2d 779 (S.D.1985), we first considered the issue of misconduct of an employee during off-duty hours and off the employer's premises. The majority opinion in *Dean* affirmed the denial of ben-

efits to an employee of the county treasurer's office, who was convicted of shoplifting a second time, after warnings from her superior that discharge could result from such an occurrence. The *Dean* majority adopted two sentences from a secondary authority, an A.L.R. annotation, as controlling law to extend employee misconduct to off-duty hours and off the employer's premises. That annotation, as summarized in *Dean,* stated:

> It is generally recognized that an employee continues in his off-duty hours to be under the duty to have regard for his employer's interest, observe the rules laid down by the employer in connection with the proper conduct of his business, and to honor the standards of behavior which the employer has a right to expect of an employee. If the violation of any of these requisites during the employee's off-duty hours leads to his discharge, unemployment compensation benefits may be denied to him for misconduct connected with the work. 89 A.L.R.2d 1090 § 2.

*Dean,* supra, at 782.

As pointed out in *Dean v. South Dakota Department of Labor: Off-Duty Employee Misconduct and the Denial of Unemployment Benefits,* 31 S.D.L.Rev. 180, 192 (1985): "The South Dakota Supreme Court cited *Yaroch* and noted that 'an employee should reasonably be aware that he invited termination if he disregarded his supervisor's admonition.'" (Citing *Dean*). *Yaroch,* however, dealt with an employee's refusal to perform tasks assigned at the workplace. *Dean's* sweeping application of the on-duty warning of *Yaroch* to an employee's off-duty conduct indicates that the disobedience of *any* admonition of an employer by an employee is grounds not only for termination, but for denial of compensation. The court could have avoided the overinclusive and underinclusive nature of *Dean* by defining duty in terms of the materiality of the breach. Instead, *Dean* appears to hold that any warning given by an employer to an employee will define the duty owed an employer by that employee.

■ Upon re-examination of the cases cited in the annotation in support of that proposition, it appears that such a rule has application in only extreme cases of disregard for the rules of employment, e.g.: unauthorized use and misuse of employer's vehicles during off-duty hours and violation of written agreements governing off-duty conduct, which materially affected employer's insurance coverage. It thus appears that the rule should be limited in it's application, and later cases have so limited the application.

■ The Supreme Court for the State of Washington, sitting en banc, in *Nelson v. Department of Employment Security*, 98 Wash.2d 370, 655 P.2d 242 (1982), was called upon to resolve the meaning of the phrase "misconduct connected with his or her work," a phrase almost identical to that found in our statute, and which we attempted to define in *Dean*. The rule laid down by the Washington Court was clear and concise:

> [I]n order to establish misconduct connected with an employee's work as required by [statute] the employer must show by a preponderance of the evidence that a reasonable person would find the employee's conduct: (1) had some nexus with the employee's work; (2) resulted in some harm to the employer's interests; and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

655 P.2d at 245; 35 A.L.R.4th at 689–90.

We now adopt the well reasoned rule laid down by the Washington Court and to that extent modify our previous holding in *Dean*. Applying this rule to the circumstances of Kotrba's discharge, we are of the opinion that Kotrba's conduct, reckless or impudent as it may be, might have been grounds for the chief of police, Kotrba's supervisor, to suspend or fire him, but it falls short of adequate grounds for denial of unemployment compensation benefits and, accordingly, we reverse the decision of the trial court and remand with instructions to reverse and remand the decision of the Department for allowance of Kotrba's benefits.

SABERS, J., and McKEEVER, Circuit Judge, concur.

HENDERSON, J., concurs with writing.

MILLER, J., dissents.

McKEEVER, Circuit Judge, sitting for WUEST, C.J., disqualified.

HENDERSON, Justice (concurring).

Needless to say, this opinion comports with my dissenting view in *Dean*, 367 N.W. 2d 783–84, and I therefore concur, with special reference in said dissent to my expressions therein, most particularly, at 784, wherein I expressed, *inter alia:* "The South Dakota Department of Labor's interpretation of the terms 'misconduct connected with his work,' as specified in SDCL 61–6–14, cannot exceed the limits of the statutory intent." (Citing *Red Bird*, 314 N.W.2d 95.)

MILLER, Justice (dissenting).

I agree with the legal analysis of the majority, but disagree with its application of the law to the facts. Specifically, I approve of the modification of *Dean* (in which I did not participate) by adopting the Washington rule in *Nelson*, so long as it is clear that we are interpreting and clarifying, rather than attempting to modify, the specific legislative enactments of SDCL 61–6–14.1.

In my opinion, the conduct of Kotrba was work-connected, even under the rule pronounced by the majority. He was a City employee who had been specifically warned by his City supervisor that as a City employee he was expected to comply with City ordinances. Rather than complying with his City supervisor, he knowingly violated the City ordinance, saying it was "no big deal." Kotrba's attitude and actions clearly "had some nexus" with his City work; "resulted in some harm" to the City's interests, since it adversely reflected on the City government and was reflective of his little

regard for the City's genuine interests; was violative of his employment obligations and done with the intent and knowledge that City's interest would suffer.

Kotrba should not be allowed to invite his own discharge and benefit thereby under the unemployment insurance laws. *Matter of Yaroch,* 333 N.W.2d 448 (S.D. 1983).

I would affirm.