Arnold **KLEINSASSER**, Grievant
and Appellant,

v.

**CITY OF RAPID CITY,**
Respondent and Appellee.

No. 16255.

Supreme Court of South Dakota.

Considered on Briefs Feb. 13, 1989.

Decided May 3, 1989.

Rehearing Denied June 9, 1989.

Linda Lea M. Viken of Finch, Viken, Viken & Pechota, Rapid City, for grievant and appellant.

Robert R. Jackson, Office of the City Atty., Rapid City, for respondent and appellee.

WUEST, Chief Justice.

This matter began as a grievance against appellee, City of Rapid City, South Dakota (City). The grievance was filed by appellant, Arnold Kleinsasser (Kleinsasser), after his termination as a City employee. When the grievance was denied, Kleinsasser appealed to the South Dakota Department of Labor (Department). The Department conducted a hearing and determined that Kleinsasser's termination was wrongful. The City appealed the Department's decision to the circuit court. The circuit court reversed the Department's decision, holding that it was affected by error of law and was clearly erroneous in light of the

entire evidence. It is from the adverse decision of the circuit court that Kleinsasser now appeals. We affirm the circuit court's decision.

The essential facts in this matter are not disputed. Kleinsasser and Teresa Reede (Reede), a married woman with two children, were employed by the City Water Department. Shortly after beginning her route as a meter reader on September 19, 1986, Reede telephoned Kleinsasser and asked him to pick her up. Kleinsasser, who was not scheduled to work that day, complied with Reede's request. The two then drove to Kleinsasser's home where they spent several hours together. Thereafter, Kleinsasser returned Reede to a point which was near the route on which she was supposed to be working. Most of Kleinsasser's and Reede's actions were observed by the assistant superintendent of the City Water Department. Because of their conduct, Kleinsasser and Reede were discharged later that same day.[1]

Kleinsasser was a member of the American Federation of State, County, and Municipal Employees (AFSCME). Pursuant to the labor union's contract with the City, Kleinsasser subsequently was furnished a letter stating the reasons for his being discharged. Of the four reasons enumerated in the letter, three alleged specific violations of conduct and work rules contained in a booklet entitled "Standard Schedule of Disciplinary Offenses and Penalties for City of Rapid City Employees." Kleinsasser previously had received and read a copy of this booklet. The alleged rules violations included "immoral, indecent, or notoriously disgraceful conduct which reflects unfavorably on the City," "falsification, misstatement, exaggeration, or concealment of material fact in connection with employment, promotion, and record, investigation or other proper proceeding," and "falsifying attendance record for oneself or another employee." The fourth reason for which Kleinsasser was discharged was

---

1. It should be noted that according to Kleinsasser's own admission, his and Reede's conduct on September 19, 1986, was not a singular occurrence. The two had rendezvoused in a similar manner on at least twenty previous occasions. In addition, both had been advised or warned by supervisors about their open relationship, displays of affection on the work premises, and Reede's leaving her route to be with Kleinsasser.

"helping another employee to willfully deceive the city in hours worked."

Shortly after his termination, Kleinsasser filed a grievance against the City, seeking to be reinstated at his former position.[2] When the grievance was denied, he appealed to the Department pursuant to SDCL 3–18–15.2.[3] The Department held a hearing on the matter and determined that Kleinsasser's conduct did not rise to the level of misconduct which would justify terminating his employment. The Department reasoned that the City failed to prove that Kleinsasser had a willful or wanton disregard of the City's interests or his duties and obligations to the City. The Department also found that the only way to justify Kleinsasser's discharge would be to impute to him Reede's misconduct. Because this would amount to an inequitable application of the City's work rules and policies, the Department concluded that Kleinsasser was wrongfully discharged.

The City appealed the Department's decision to the circuit court. The circuit court determined that the Department's decision was affected by error of law and clearly erroneous in light of the entire evidence. Specifically, the circuit court held that the Department erred in concluding that Kleinsasser's actions on September 19, 1986, were not misconduct. The circuit court disagreed with the standard applied by the Department in determining "work-connected misconduct." The Department applied to the present case the same standard used to determine whether an employee committed "work-connected misconduct" that would deprive him of unemployment compensation. The circuit court correctly stated that the standard for misconduct used in employment termination cases is less stringent. In reversing the Department's decision, the circuit court concluded that the City did not wrongfully discharge Kleinsasser because his actions constituted "work-related misconduct" under either standard.

Kleinsasser now appeals to this court, essentially raising two issues. He first contends that the circuit court wrongfully substituted its judgment for that of the Department and that it applied the wrong standard in determining misconduct. In his second contention, Kleinsasser argues that the circuit court should have dismissed this matter because the City failed to file its brief in a timely manner.

Our standard of review in this matter is determined by the provisions in SDCL 1–26–36. These provisions were succinctly restated by this court in *Permann v. Dept. of Labor, Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987). In *Permann*, we stated:

Common sense dictates which standards apply to the different matters reviewed. The agency, after holding a hearing and listening to witnesses, is in a much better position to find facts than are we on appeal. On questions of law, however, it is well within our province to interpret statutes without any assistance from the administrative agency. It is well settled that conclusions of law made by a trial court are given no deference by this court on appeal, and lacking special circumstances, we see no reason to give deference to agency conclusions of law.

*Id.* at 117 (footnote omitted). *See also Sambo v. City of Mitchell*, 427 N.W.2d 379 (S.D.1988); *Matter of Kotrba*, 418 N.W.2d 313 (S.D.1988).

Having reviewed the transcript of the hearing conducted by the Department in the present case, we cannot conclude that the Department's findings of fact are clearly erroneous. The same can be said for those of the circuit court which differ from the Department's findings of fact only by exceeding them in detail. The Department's conclusions of law, however, are a

---

**2.** The contract between ASFCME and the City outlined the grievance procedure to be followed in cases involving the discharge or the disciplinary suspension of an employee.

**3.** SDCL 3–18–15.2 provides, in pertinent part: If, after following the grievance procedure enacted by the governing body, the grievance remains unresolved, ... it may be appealed to the department of labor.... The department of labor shall conduct an investigation and hearing and shall issue an order covering the points raised, which order is binding on the employees and the governmental agency....

different matter. As previously stated, the Department concluded that Kleinsasser's conduct did not rise to the level of misconduct that would justify his being discharged. This conclusion was based on the Department's erroneous application of the standard used in determining whether an employee's misconduct would deprive him of unemployment compensation.

■ In *Matter of Kotrba*, 418 N.W.2d 313 (S.D.1988), this court defined "work-connected misconduct" as grounds for the denial of unemployment benefits. We stated:

> [I]n order to establish misconduct connected with an employee's work as required by [statute] the employer must show by a preponderance of the evidence that a reasonable person would find the employee's conduct: (1) had some nexus with the employee's work; (2) resulted in some harm to the employer's interests; and, (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

*Id.* at 316 (*quoting Nelson v. Department of Employment Security*, 98 Wash.2d 370, 655 P.2d 242, 245 (Wash.1982)). This standard or rule, however, is inapplicable to the present case. The present case concerns misconduct justifying the termination of employment. What constitutes misconduct justifying termination of an employee and what is misconduct which warrants denial of employment benefits are two separate decisions. *Pierce v. Iowa Dept. of Job Service*, 425 N.W.2d 679, 680 (Iowa App. 1988); *Kotrba*, 418 N.W.2d at 316; *Johnson v. Department of Employment Sec.*, 138 Vt. 554, 420 A.2d 106, 107 (1980). The standard for determining whether misconduct rises to the level which justifies discharging an employee is lower than that which determines whether an employee's misconduct will deprive him of unemploy-

ment compensation. *See Kotrba*, 418 N.W. 2d at 316. This conclusion was correctly reached by the circuit court in this matter and the Department erred in failing to recognize this distinction between said standards.

■ The circuit court also correctly concluded that the Department made an error of law when it determined that Kleinsasser's employment had been wrongfully terminated. It is undisputed that Kleinsasser was romantically involved with a married woman, namely, Reede. On September 19, 1986, the two were seen driving to Kleinsasser's home where they spent several hours together. This occurred during Reede's working hours. In addition, Kleinsasser and Reede were observed displaying affection toward each other on the grounds of the City's water treatment facilities.

We find that Kleinsasser's conduct on the day he was discharged falls within the broad parameters of that which is immoral, indecent, or notoriously disgraceful and reflects unfavorably on the City. Municipal employees, whether in the performance of their jobs or in their off-duty behavior, are constantly under the ever watchful eyes of the public. The very nature of Kleinsasser's conduct has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. *See State v. Civil Service Com'n of City of West Allis*, 27 Wis.2d 77, 133 N.W.2d 799 (1965); *Civil Service Com'n of Philadelphia v. Wiseman*, 93 Pa.Cmwlth. 358, 501 A.2d 350 (1985); *In re Zeber's Appeal*, 398 Pa. 35, 156 A.2d 821 (1959). By his actions on September 19, 1986, Kleinsasser violated a specific provision of the "Standard Schedule of Disciplinary Offenses and Penalties for City of Rapid City Employees." The maximum penalty for this violation, according to said booklet, was termination of employment. Accordingly, we hold that Kleinsasser's termination as an employee of the City was not wrongful.[4]

---

4. As previously noted, three of the four reasons for Kleinsasser's discharge alleged specific violations of rules contained in the "Standard Schedule of Disciplinary Offenses and Penalties

for City of Rapid City Employees." Justice Henderson and Justice Miller (as well as those who join in his writing) correctly assert that this booklet was part of the employment agreement

In his second issue on appeal, Kleinsasser claims that the circuit court should have dismissed the City's appeal because it failed to timely file its brief. Under SDCL 1–26–33.2, the City was required to serve its brief "within thirty days after the delivery of the transcript of the contested case hearing ... or within thirty days after the service of the notice of appeal upon [Kleinsasser], whichever event occur[red] later." The City filed its notice of appeal on September 21, 1987, and served an order for a transcript ten days thereafter.[5] The transcript was delivered to the Pennington County Clerk of Courts for filing on November 3, 1987. The following day, Kleinsasser filed with the circuit court a motion to dismiss the City's appeal because of its failure to file its brief. The City had proceeded under the premise that its brief was due thirty days after the transcript was delivered to said clerk of courts. Because both parties earlier had obtained copies of the transcript, Kleinsasser argues that the City's brief was due within forty-five days after filing the notice of appeal.

At the heart of this issue is the unclear meaning of the phrase "delivery of the transcript" contained in SDCL 1–26–33.2. The City contends that this phrase refers to delivery to the clerk of courts. Kleinsasser, of course, claims that the phrase refers to delivery of the transcript to the appellant.

Kleinsasser's argument is based upon SDCL 15–26A–75, which states, "If the transcript is obtained prior to appeal, ... then the appellant shall serve and file his brief within forty-five days after service of the notice of appeal upon the adverse party." Kleinsasser also relies upon SDCL 1–26–32.1, which provides:

> The sections of Title 15 relating to practice and procedure in the circuit courts shall apply to procedure for taking and conducting appeals under this chapter so far as the same may be consistent and applicable, and unless a different provision is specifically made by this chapter or by the statute allowing such appeal.

We believe Kleinsasser's reliance on the aforementioned statutes is misplaced. The sections of Title 15 concerning practice and procedure in the circuit courts are contained in SDCL ch. 15–6. SDCL ch. 15–26A, of which SDCL 15–26A–75 is a part, governs "procedure in civil appeals to the Supreme Court of South Dakota." SDCL 15–26A–1. The statutory provision upon which Kleinsasser principally relies, namely, 15–26A–75, therefore is inapplicable.

We believe that the phrase "delivery of the transcript" refers to delivery to the clerk of courts for filing. The circuit court, in denying Kleinsasser's motion to dismiss, stated that if the "interpretation were otherwise, it would be virtually impossible for a court to meaningfully determine when a transcript was delivered to an appellant." We agree.

The decision of the circuit court is affirmed in all aspects.

MORGAN, SABERS, and, MILLER, JJ., concur specially in part and concur in result in part.

HENDERSON, J., specially concurs.

HENDERSON, Justice (specially concurring).

In joining the majority opinion, I specifically join the Chief Justice's writing, which holds that the *Kotrba* standard is inapplicable to the present case. This is simply not an unemployment compensation case such as *Kotrba*. Rather, this case should be judged on standards for termination of employment, considerably less stringent than those standards pertaining to a denial of unemployment compensation. Kleinsasser

---

betwen AFSCME and the City. Of the alleged rules violations, however, the only one directly applicable to Kleinsasser was Rule 24 which regarded immoral, indecent or notoriously disgraceful conduct which reflected unfavorably on the City. To hold that Kleinsasser violated the other two rules would require our attributing to him Reede's misconduct.

5. Under SDCL 1–26–32.2, the failure of the appellant to order from the agency or reporter a transcript of the proceedings within ten days after filing the notice of appeal constitutes a waiver of the right to such a transcript.

relies on cases such as *Kotrba, Gratzfeld v. Bomgaars Supply*, 391 N.W.2d 200 (S.D. 1986), and *Nelson v. Employment Security Dept.*, 98 Wash.2d 370, 655 P.2d 242 (1982). Both *Nelson* and *Gratzfeld* are unemployment compensation cases. We are here adjudicating upon and reviewing the lower proceedings pertaining to a grievance filed by Kleinsasser for being unlawfully discharged from his employment. Kleinsasser filed a Step One grievance with the city, and later a Step Two grievance. When he lost both of these, he appealed to the Department of Labor under SDCL 3–18–15.2. The Department found for Kleinsasser, presuming that he was unlawfully discharged (terminated) and ordered, based on that determination, that Kleinsasser be reinstated without loss of seniority and that he be paid all back pay, with interest. The Honorable Jeff Davis, Circuit Judge, ruled against the Department's holding and Kleinsasser. Thereupon, Kleinsasser appealed to this Court.

This so-called "unlawful discharge" is before us. However, it is important to note that Kleinsasser filed for unemployment compensation, and the city did not contest his request. Thus, he was granted unemployment compensation. I repeat: This is not an unemployment compensation case, and the unemployment compensation standards of review are not pertinent. This is absolutely a grievance proceeding under authority of SDCL 3–18–15.2.

If we then logically follow the grievance proceeding thesis, we also consider SDCL 3–18–1.1. This defines a grievance proceeding and expresses the function of the Department. In essence, a complaint filed by a public employee is reviewed to determine if there is a violation of an existing agreement, policy, rule, or regulation. A function of the Department is to hear the evidence and make that determination. The circuit court observed that Department had strayed from its function to administratively review Kleinsasser's grievance and had mentally wandered into the civil rights and unemployment compensation areas of law.

Lastly, in supporting the Chief Justice's writing, I wish to mention Exhibit A. Exhibit A was a letter from the City of Rapid City to Kleinsasser, dated September 22, 1986, signed by William Craig, Operations Engineer. It specifies four reasons for Kleinsasser's discharge:

1. Rule 24—Immoral, indecent or notoriously disgraceful conduct which reflects unfavorably on the city.

2. Rule 27—Falsification, misstatement, exaggeration, or concealment of material fact in connection with employment, promotion, any record, investigation or other proper proceeding.

3. Rule 28—Falsifying attendance record for oneself or another employee.

4. Helping another employee to willfully deceive the city in hours worked.

Existing was an AFSCME Contract (1986). City employees agreed to this contract. The Public Works Rules included a standard schedule of disciplinary offenses and penalties for the City of Rapid City's employees. It appears that Kleinsasser was terminated because of a violation of rules promulgated pursuant to mutual agreement of the City of Rapid City and its employees. There was, therefore, no meritorious grievance and no unlawful discharge.

MILLER, Justice (concurring specially in part, concurring in result in part).

I agree with the majority opinion except for the holding that Kleinsasser's conduct "falls within the broad parameters of that which is immoral, indecent, or notoriously disgraceful and reflects unfavorably on the city" and "has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services."

Certainly, Kleinsasser's off-duty affair with a married woman was immoral and indecent, but the immorality, in and of itself, did not, in my opinion, reflect unfavorably on the city or tend to destroy public respect for municipal employees or confidence in the municipality's services. It was the fact that he knowingly assisted another employee in willfully deceiving the city as to hours worked which caused the

discharge. Additionally, he certainly aided and assisted his paramour in violating Rules 27[1] and 28[2] of the city's Standard Schedule of Disciplinary Offenses, which was a part of his employment contract.

I am authorized to state that Justices Morgan and Sabers join in this special concurrence in part and concurrence in result in part.

---

**1.** Rule 27 prohibits the falsification, misstatement, exaggeration or concealment of material facts in connection with employment, promotion, any record, investigation or other proper proceeding.

**2.** Rule 28 prohibits falsifying attendance records for oneself or another employee.