1996 SD 51

**Linda REHM and Russell Rehm, Plaintiffs and Appellants,**

v.

**Eldon LENZ and West River Mental Health Center, a/k/a Behavior Management Systems, Defendants and Appellees.**

**No. 19201.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1996.

Decided May 8, 1996.

Steven C. Beardsley and Mary A. Gubbrud of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for plaintiffs and appellants.

Robert L. Lewis of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendant and appellee Eldon Lenz.

J. Crisman Palmer and Talbot J. Wieczorek of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for defendant and appellee West River Mental Health Center.

[¶ 1] MILLER, Chief Justice, delivers the majority opinion of the Court on that part of Issue I which applies a six-year statute of limitations to the claims against Lenz and reverses and remands for trial the summary judgment in favor of Lenz, and on Issue II.

[¶ 2] SABERS, Justice, delivers the majority opinion of the Court on that part of Issue I holding that the two-year medical malpractice statute of limitations applies to a psychologist treating depression.

[¶ 3] MILLER, Chief Justice, writing the majority opinion on that part of Issue I which applies a six-year statute of limitations to the claims against Lenz and reverses and remands for trial the summary judgment in favor of Lenz, and on Issue II.

[¶ 4] Linda Rehm and Russell Rehm appeal from an order granting summary judgment to psychologist Eldon Lenz and granting partial summary judgment to his former employer West River Mental Health Center (West River). We affirm in part, reverse in part, and remand.

## FACTS

[¶ 5] The facts of this case are nearly identical to those which gave rise to *Richards v. Lenz*, 539 N.W.2d 80 (S.D.1995). Both cases involve the claims of a husband and wife who received therapy from Lenz while he worked for West River. The various claims are based on Lenz' alleged improper handling of the transference phenomenon [1] in therapy sessions and the development of a romantic relationship between Lenz and the client wife. The facts of this case are so strikingly similar to those in *Richards* that only a summary is necessary here.

[¶ 6] After being hospitalized for depression, Linda was referred to West River for treatment of her depression. In December, 1986, she began individual counseling at West River and was counseled by Lenz. At this same time, Russell was also counseled individually by Lenz for depression and feelings of guilt. During her therapy, Linda experienced the transference phenomenon, viewing Lenz as her father. Lenz allegedly responded by introducing a sexual overtone to Linda's therapy and developing a romantic (and at times physical) relationship with her. As in the *Richards* case, Lenz conducted these therapy sessions both at his home and at West River's office.

[¶ 7] After Lenz left West River in September, 1988, he worked privately as a psychologist. He continued to counsel Linda at his private office and at his home. In 1990, Lenz moved to Indiana. Linda continued to seek out Lenz' professional help and romantic indulgences. She also returned to West River for counseling. In March, 1991, Lenz sent a letter to Linda stating that "there never has been and never will be a romantic relationship between them." On December 31, 1991, Linda and Lenz met for a "closure" session arranged by Linda's then-current therapist at West River, Ms. Karin Wood. Although Russell ended his therapy sessions at West River in 1989, Linda continued to seek counseling at West River until 1993.

[¶ 8] In October and November, 1993, Rehms served Lenz and West River with a complaint containing the following claims:

1. negligence against Lenz and West River;
2. negligence against West River;
3. breach of fiduciary duty against Lenz and West River;
4. negligence against West River;
5. fraud and deceit against Lenz and West River;
6. alienation of affections against Lenz;
7. breach of contract against Lenz and West River; and
8. willful and wanton conduct (punitive damages) against Lenz and West River.

Although similar, the *Richards* complaint also included a claim for medical malpractice, which Rehms' does not. In addition, the Rehms' complaint added claims based on alienation of affections or willful and wanton conduct (punitive damages), which were not included in the *Richards* complaint.[2] The trial court granted Lenz' motion for summary judgment, dismissing the entire complaint against him on the basis that it had

---

1. The transference phenomenon was described in *Richards:*

   [A]s therapy develops ... the client comes to ... regard the therapist as a child might regard the parent.... And, so what happens when therapy is working ... is that this transference relationship grows so that the client

   comes to experience the therapist as a powerful, benevolent parent figure.
   539 N.W.2d at 81–82, n*.

2. The plaintiffs here are represented by the same counsel as were the Richards. Likewise, Lenz and West River each are individually represented by the same attorneys as in the *Richards* case.

been served after the expiration of the statute of limitations for medical malpractice. It granted partial summary judgment to West River on the same basis, and certified the matter pursuant to Rule 15–6–54(b). Rehms appeal.

## STANDARD OF REVIEW

[¶ 9] This case involves a challenge to the summary judgments awarded in favor of Lenz and West River. As such, the standard of review applicable to both issues is the same as enunciated in *Richards:*

> The party moving for summary judgment has the burden to show that [t]here is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. The evidence, including all pleadings, affidavits and deposition testimony, must be viewed in the light most favorable to the non-moving party, and reasonable doubts should be resolved against the moving party. All reasonable inferences that may be drawn from the facts must be accepted in favor of the non-moving party. Summary judgment is a drastic remedy, and should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy.

539 N.W.2d at 83 (quotation and citations omitted). It is against this standard that we evaluate the merits of this appeal.

## ISSUES

[¶ 10] **I. The trial court erred in granting summary judgment dismissing the Rehms' claims against psychologist Lenz.**

[¶ 11] The Rehms argue that the trial court should not have applied the medical malpractice statute of limitation. They also contend there are factual disputes remaining as to when the counselor/patient relationship with Lenz ended and whether his acts were continuing torts which would alter application of

the statute of limitation. We conclude that the applicable limitation period is a 6–year period, within which the Rehms did file their claim. Thus, Lenz was not entitled to summary judgment.

[¶ 12] As in *Richards,* the trial court [3] reasoned that the complaint essentially alleges medical malpractice and applied the 2–year statute of limitation for malpractice claims against practitioners of the healing arts to bar suit against Lenz. *See* SDCL 15–2–14.1. The court concluded Lenz was a "practitioner of the healing arts" because the definition of "healing art" includes treatment for any "mental condition." SDCL 36–2–1(3).[4] The trial court found the evidence clearly established there was no relation of physician and patient after March 1991 and, since Lenz was served with the complaint in November, 1993, the two-year limitation period had expired and the Rehms' claims were barred.

[¶ 13] In *Richards,* we rejected this result based on our conclusion that a psychologist providing marriage counseling is not a practitioner of the healing arts, as defined by SDCL 36–2–1(3). Consequently, we held that the medical malpractice statute of limitation did not apply:

> Under the facts presented in this case, negligent marriage counseling is not medical malpractice within the language of SDCL 15–2–14.1. We hold that the trial court erred in holding that the two-year statute of limitations provided in SDCL 15–2–14.1 is an affirmative defense to the Richards' amended complaints.

539 N.W.2d at 84. Thus, we concluded that the Richards' claim was not a medical malpractice claim.

[¶ 14] In this case, none of the parties have argued that a separate analysis should apply to a psychologist when he or she is counseling a person for symptoms of depression rather than for distress caused by

---

3. Circuit Court Judge John W. Bastian presided over this case, but was not the presiding judge in *Richards.*

4. SDCL 36–2–1(3) defines "healing art" as:
   [A]ny system, treatment, operation, diagnosis, prescription, or practice for the ascertainment,

cure, relief, palliation, adjustment, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, unhealthy or abnormal physical or mental condition[.]

a failing marriage. A fair reading of *Richards* indicates that there might be a distinction between the *Richards* case where the clients sought joint and individual marriage counseling and this case where Linda and Russell each sought individual counseling and therapy for "depression." We recognize, however, that neither the trial court nor the parties had the benefit of our decision in *Richards* because it was not released until after the principal briefs in this appeal were filed. Nonetheless, the distinction between the nature of the services provided by Lenz was not briefed by the parties, and the trial court's decision only touched on the significance of the distinction. We cannot consider an issue not raised or briefed on appeal. *Centrol Inc. v. Morrow,* 489 N.W.2d 890, 893–94 (S.D.1992). Consequently, we should not speculate on whether it is possible for a psychologist to provide services in a specific instance which could be characterized as falling within the definition of the healing arts. Further, the Rehms did not couch their allegations in terms of medical malpractice (although they do refer to professional malpractice). Even if they had used that term, however, the analysis of *Richards* dictates that a psychologist providing counseling services is not the equivalent of a medical practitioner engaged in the healing arts. Thus, the 2–year statute of limitations for medical malpractice does not apply to the Rehms' complaint. Even if the medical malpractice statute of limitations did apply to psychologists providing counseling for depressed persons, as suggested by the concurrence in part, Lenz' conduct by its very nature was not undertaken to "treat" depression and is not entitled to the protection of the limitations period for practitioners of the healing arts.

[¶ 15] In abiding by our decision in *Richards,* we must determine what is the applicable limitations period. As in *Richards,* the Rehms' allegations are based on negligence, breach of fiduciary duty, fraud and deception, and breach of contract, and they have also added claims for alienation of affections and punitive damages. The limitations periods applicable to these several claims range from a three-year statute of limitations for the negligence claims, SDCL 15–2–14, to a six-

year limitation period for the claims based on fraud and breach of contract, SDCL 15–2–13.

[¶ 16] When assessing a complaint which alleges claims involving various limitation periods, it is necessary to apply the nature of the allegations test to determine which period applies.

> [I]n South Dakota, when one of two statutes of limitations may be applicable, such application should always be tested by the nature of the allegations in the complaint, and if there is any doubt as to which statute applies, such doubt should be resolved in favor of the longer limitation period.

*Richards,* 539 N.W.2d at 85 (quoting *Morgan v. Baldwin,* 450 N.W.2d 783, 786 (S.D.1990)). In *Richards,* we evaluated the plaintiffs' claims which are virtually identical to those here. Our conclusion in that case is equally applicable here:

> It thus appears that the Richards' claims of negligence, fraud, and breach of contract are all interwoven as allegations of the defendants' wrongful conduct. The Richards' separate complaints state a single wrong for which there can be only one recovery, although the allegations in the complaints purport to state several distinct causes of action arising from negligence, fraud or misrepresentation, or breach of contract. The Richards' claims arise out of their agreement with [West River] to provide marriage counseling and [West River's] action in assigning Lenz to provide such counseling service to the Richards. The allegations in the complaints lead to the conclusion that the gravamen of the complaints is as much based in contract as it would be in negligence or fraud.

539 N.W.2d at 85.

[¶ 17] Similarly, Rehms' claims are grounded in tort, fraud, and contract, leaving doubt as to which limitations period applies. Since such doubt exists, it must be resolved in favor of the longer six-year period governing claims of fraud and breach of contract. 539 N.W.2d at 86. Consequently, it was error for the trial court to have ruled that the two-year limitation period applicable to medical malpractice barred the Rehms' claims

against Lenz. The summary judgment in favor of Lenz is reversed.

**[¶ 18] II. The trial court did not err in granting partial summary judgment in favor of West River on the basis that the three-year statute of limitation for negligence had expired on the Rehms' claims against West River for negligent hiring and supervision of Lenz.**

[¶ 19] As their second issue, Rehms assert the trial court erred as a matter of law when it concluded that the three-year limitations period on two of their negligence claims against West River began in September, 1988, when Lenz left the employment of West River. They argue that West River's liability for Lenz' misconduct continued even after he left their employment. In contrast, West River argues alternatively that these claims are governed by the two-year limitations period for medical malpractice claims, that the time period began when Lenz was no longer employed by West River, and that Rehms were aware of their potential claims and are not entitled to any extension of the limitation period based on fraudulent concealment.

[¶ 20] Count I of the complaint alleges negligence by West River under a respondeat superior theory, and Count II alleges negligent hiring, supervision, and retention of Lenz. In its memorandum decision, the trial court stated the rationale for its decision that these two claims were barred: "The facts are clear that Lenz left the employ of West River in September 1988. Plaintiffs fail to provide any authority or argument that the statute of limitations did not expire in September 1991. The continuing treatment rule has no application here."

[¶ 21] Initially, it should be acknowledged that employers can be held responsible for the negligent acts of their employees under a respondeat superior theory, and that negligent hiring and supervision of an employee may also give rise to liability. *See Nelson v. Nelson Cattle Co.*, 513 N.W.2d 900 (S.D.1994) (negligent supervision); *Bass v. Happy Rest, Inc.*, 507 N.W.2d 317 (S.D. 1993) (respondeat superior). Here, Counts I and II sound in negligence based on the employment relationship between West River and Lenz.[5] The claims based on respondeat superior and failure to exercise care in hiring, supervising, and retaining Lenz are plainly based on negligence, to which the longer three-year limitation period applies. SDCL 15–2–14(3). The trial court's conclusion in this regard was proper.

[¶ 22] However, the focus of the dispute on this issue is when the three-year limitation period began to run. West River contends, and the trial court agreed, that it started when Lenz left the employment of West River in September, 1988 and expired three years later in September, 1991. On the other hand, Rehms contend that the period did not begin until a) August, 1993 when Linda stopped going to West River, or b) December 31, 1991, when Linda had her closure session with Lenz, or c) September, 1988, in which case the time period was tolled by West River's fraudulent concealment of Lenz' wrongful conduct both at the time it employed Lenz and throughout the duration of counseling provided to Linda through 1993.[6]

[¶ 23] In calculating the limitation period, we have steadfastly adhered to the occurrence rule, which requires that the statute of limitations begins from the time when the wrongful act occurred, not when it was discovered by the plaintiff. *Shippen v. Parrott,*

---

5. Rehms have made separate claims against West River on the basis of the professional treatment they received (which are not the subject of this appeal); the claim here is solely based on the employer-employee relationship and its obligations.

6. The question of whether the time period was tolled by fraudulent concealment was never raised before the trial court. However, this fact is not mentioned in the briefs of any of the parties. Since the trial court was never asked to rule on whether fraudulent concealment existed and would have tolled the statute of limitations, the issue is not properly before this Court and is waived. *See State v. Jones*, 521 N.W.2d 662 (S.D.1994); *St. Cloud v. Leapley*, 521 N.W.2d 118 (S.D.1994); *Black Hills Novelty Co. v. SD Comm'n on Gaming*, 520 N.W.2d 70 (SD 1994).

506 N.W.2d 82 (S.D.1993). The only exception to this rule has been recognized for continuous professional treatment or representation where an action was brought directly against the professional. *Bosse v. Quam*, 537 N.W.2d 8 (S.D.1995) (accountant); *Schoenrock v. Tappe*, 419 N.W.2d 197, 201 (S.D.1988) (lawyer); *Alberts v. Giebink*, 299 N.W.2d 454 (S.D.1980) (doctor). In *Richards*, we declined to consider application of the continuing tort theory to Lenz' conduct because we concluded that he was not entitled to the benefits of the medical malpractice statutes because he is not a practitioner of the healing arts. Likewise, we refuse to extend the continuing tort theory here.

[¶ 24] Count I and II involve West River's conduct only as it relates to its employment of Lenz, and it is logical that we limit that responsibility to the time during which West River employed Lenz, as did the trial court. The claim made in Count II is that West River was negligent in hiring, supervising, and retaining Lenz. Any claim of negligence in this respect cannot survive beyond the point in time when West River no longer employed Lenz. It is illogical to contend West River negligently supervised or retained Lenz after Lenz left its employment; once Lenz left West River had no right to supervise or direct Lenz. Surely, West River could not be liable for negligent retention of Lenz once it no longer retained him.

[¶ 25] As to the claim in Count I that West River is liable for Lenz' improper counseling based on respondeat superior, it is likewise logical to limit that liability to the period of time in which West River was, in fact, Lenz' superior. However, Rehms would have us extend West River's liability for Lenz' wrongful acts beyond the time during which he was employed by West River because it provided him the opportunity for contact with Linda and Russell and because it employed him while he embarked on his course of wrongful conduct. They point to a New Hampshire case which held that a school district could be held liable for sexual improprieties of its teachers with students even after the students had graduated or when the conduct occurred outside of school.

*Marquay v. Eno*, 139 N.H. 708, 662 A.2d 272 (1995). Even were it binding authority, that case does not apply to the facts here, as West River points out. *Marquay* held the school district employer liable for the sexual misconduct of teachers which it continued to employ; its employees had not left their jobs as did Lenz.

[¶ 26] While we did not have an opportunity to reach this issue in *Richards*, we will not extend current law to permit the limitation period to continue almost indefinitely in suits against an employer based on the wrongful acts of an employee. Linda's contention that the period did not begin until she terminated counseling with West River in 1993 is untenable. Under that logic, if she had never stopped counseling with West River, it could be liable for Lenz' actions into the next millennium. Calculation of the three-year statute of limitations from the date that Lenz left West River provides certainty to both plaintiffs and defendants. The trial court properly applied the three-year limitations period as starting when the employer-employee relationship was terminated in September, 1988, and expiring in September, 1991.

[¶ 27] Finally, Rehms contend that even if the trial court applied the proper limitations period, a disputed factual issue remains as to when West River's breach of its duties to Linda and Russell ended. However, the limitation period for an employer's liability for acts of its employee and for negligent hiring, supervision, and retention commences when the employment relationship terminates. Thus, the only material fact is the date the employer-employee relationship ended. Here, it is undisputed that Lenz left West River in September, 1988. Thus, it was proper for the trial court to grant summary judgment based on the expiration of the three-year statute of limitation for negligence because Lenz left West River in September, 1988 and Rehms did not commence this action against them before September, 1991.

[¶ 28] We reverse and remand the summary judgment dismissing the claims against Lenz, and affirm the partial summary judg-

ment dismissing Count I and Count II of the complaint against West River.

[¶ 29] AMUNDSON, J., concurs.

[¶ 30] DOBBERPUHL, Circuit Judge, concurs in part and concurs in result on Issue I, and concurs on Issue II.

[¶ 31] SABERS, J., dissents on Issue I and concurs in result on Issue II.

[¶ 32] GILBERTSON, J., dissents on Issue I, and concurs on Issue II.

[¶ 33] DOBBERPUHL, Circuit Judge, for KONENKAMP, J., disqualified.

[¶ 34] SABERS, Justice, writing the majority opinion on that part of Issue I holding that the two-year medical malpractice statute of limitations applies to a psychologist treating depression, and concurring in result on Issue II.

[¶ 35] The trial court was correct in holding that the two-year statute of limitations governed the causes of action whether based on contract or tort. The majority reverses on the basis that the Rehms "did not couch their allegations in terms of medical malpractice (although [the majority concedes] they do refer to professional malpractice)." This distinction without a difference misses the point because South Dakota law provides a two-year statute of limitation for "[a]n action against a . . . practitioner of the healing arts for malpractice, error, mistake or failure to cure, whether based upon contract or tort." SDCL 15–2–14.1. Under the majority's rationale, a plaintiff can bring a medical malpractice claim against a medical practitioner and avoid an unfavorable medical malpractice statute of limitations simply by avoiding the term "medical malpractice." This puts form over substance in the worst way.

[¶ 36] In my dissent in *Richards v. Lenz*, 539 N.W.2d 80, 86 (S.D.1995), I stated:

The trial court was correct that Lenz, a psychologist, is a practitioner of the healing arts under the facts of this case because the Richards were seeking treatment for a "human disease, ailment, . . . injury, unhealthy or abnormal physical or

mental condition." SDCL 36–2–1(3). They had an "unhealthy mental condition" and they were seeking marriage counseling from a practitioner of the healing arts. We do not need to "expand the language of the statute beyond its plain language," we simply need to read and interpret it *plainly.*

[¶ 37] The *Richards* majority answered the narrow question, "whether a psychologist providing marriage counseling is a practitioner of the healing arts." *Richards,* 539 N.W.2d at 84. SDCL 36–2–1(3) defines "healing art" as follows:

[A]ny system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, unhealthy or abnormal physical or mental condition[.]

If we give effect to *Richards* at all, we should limit it to its facts; a psychologist providing marriage counseling might not be a practitioner of the healing arts. However, Rehms *were* seeking treatment for an "unhealthy . . . mental condition." SDCL 36–2–1(3). They sought counseling for depression. This places Lenz within the definition of "healing arts" in SDCL 36–2–1(3). Practitioners of the "healing arts" are included in the two-year medical malpractice statute of limitation.

[¶ 38] The *Richards* majority stated the legislature could have included psychologists in its list of specified medical practitioners if it intended to include them in the medical malpractice statute of limitation, SDCL 15–2–14.1. However, the legislature specifically said, "or other practitioner of the healing arts" and defined "healing arts" in SDCL 36–2–1(3) which includes "unhealthy . . . mental condition of any nature." How can one reasonably expect the legislature to be more inclusive than that? If the legislature intended to *exclude* psychologists from the definition of "healing arts," it certainly could have done so as it did with psychoanalysts (SDCL 36–2–6), officers of the armed forces (SDCL 36–2–8), and consulting practitioners from other states (SDCL 36–2–9).

[¶ 39] In my view, we are making a big mistake in going this way down this road. We should correct our course before a plain legislative act is bent completely out of shape.

[¶ 40] In Judge Dobberpuhl's special writing, he asks: "Do intentional acts which are not undertaken for the treatment of a mental condition constitute malpractice?" I say the answer is that it does not make any difference because SDCL 15–2–14.1 provides a two-year statute of limitations for [actions] "whether based upon contract or tort." Even intentional acts *are torts* and are included.

[¶ 41] As indicated above, one should not be able to defeat the intent of the Legislature simply by language labeling a tort as an intentional act. Nor should we, as an appellate court, be able to convert the plaintiff's pleadings from negligence to intentional acts, without their consent. Yet, that is the effect of Judge Dobberpuhl's writing and interpretation here. I am sure that insurance companies across the nation, who do not cover intentional acts, will be pleased to be relieved from their obligation to provide coverage.

[¶ 42] On issue 2, I agree that the trial court was correct in granting partial summary judgment in favor of West River. However, the two-year statute (SDCL 15–2–14.1) controls as it does on issue 1. One cannot avoid the obvious statute of limitations simply by alleging negligent hiring or supervision. In the absence of fraudulent concealment or the continuing treatment rule, the lawsuit had to be commenced within two years, not three years, of the last act of negligence of Lenz or West River. Therefore, I concur only in result on issue 2.

DOBBERPUHL, Circuit Judge, concurring in part and concurring in result in part on Issue I, and concurring on Issue II.

[¶ 43] This case represents two issues. First, the Court must consider whether a psychologist is a "practitioner of the healing arts." Second, the Court must determine whether acts undertaken with no professional purpose are within the parameters of malpractice, and are thus subject to the two-year statute of limitations, or whether the alleged acts are outside the parameters of professional relationship.

[¶ 44] **ISSUE 1: Is a psychologist a practitioner of the healing arts within the meaning of the statute of limitations covering medical malpractice?**

[¶ 45] Our statutes do not define "practitioner of the healing arts." However, the definitions of "healing art," "human ill," "diagnosis," and "treatment" provide guidance as to the types of maladies which are treated by such practitioners as well as the methods of treatment used by them. Thus, the term "practitioner of the healing arts" can be confined to those persons actively treating such maladies in a manner provided for by the statutes.

[¶ 46] SDCL 36–2–1(3) defines "healing art" as:

[A]ny system, *treatment,* operation, *diagnosis,* prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, ... or correction of any *human disease,* ailment, deformity, injury, unhealthy or abnormal physical or mental condition[.]

(Emphasis added). "Treatment" is defined as "the use of drugs, surgery ... *or any other means of any nature whatsoever* for the cure, relief, palliation, adjustment or correction of *any human ill* as defined herein." SDCL 36–2–1(6)(emphasis added). "Diagnosis" is defined as "the use professionally of any means for the discovery, recognition, or determination of *any human ill.*" SDCL 36–2–1(2)(emphasis added). "Human ill" is defined as "any *human disease,* ailment, deformity, injury *or unhealthy or abnormal physical or mental condition of any nature.*" SDCL 36–2–1(4)(emphasis added). Clearly, these definitions when read together indicate that one who attempts to treat an unhealthy or abnormal mental condition of any nature by any means is a "practitioner of the healing arts."

[¶ 47] The chapter governing psychologists provides the Court with a sound statutory basis for determining whether psychologists fall within the parameters of the term "practitioner of the healing arts" as defined above.

SDCL 36–27A–1(5) defines the "practice of psychology" as:

> [R]endering or offering to render to individuals ... any service involving the application of psychological procedures for the assessment, *diagnosis*, prevention, *treatment* or amelioration of psychological problems *or emotional or mental and nervous disorders* of individuals.... [7]

By definition then, a psychologist acts to diagnose and treat the mental and/or nervous disorders of his or her patients. The fact that he or she does so through the use of psychological procedures does not take that treatment out of the definition of "treatment" discussed above. Therefore, a psychologist falls within the purview of the term "practitioner of the healing arts," and claims based on malpractice by a psychologist should be subject to the two-year statute of limitations provided at law.

### [¶ 48] ISSUE 2: Do intentional acts which are not undertaken for the treatment of a mental condition constitute malpractice?

[¶ 49] Malpractice has as its central core a professional's liability for failure to properly render services provided to another *in the context of that party's practice of his or her profession.* On this basis, it has been held that some psychologists who engage in sexual relations with their patients have committed malpractice by improperly diagnosing and handling a patient's manifestation of "transference phenomenon"—e.g. the transferring to the therapist of feelings and behaviors that had previously been experienced with important figures such as parents, siblings, or spouses. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Love,* 459 N.W.2d 698, 701 (Minn.1990).

[¶ 50] It appears that in situations where allegations of misdiagnosis and/or mishandling of treatment of "transference" were present, most jurisdictions considering the issue have found malpractice was an appropriate cause of action. *See, e.g., Doe by Roe v. Madison Center Hosp.,* 652 N.E.2d 101 (Ind.App.1995); *Love,* 459 N.W.2d at 701; *Corgan v. Muehling,* 167 Ill.App.3d 1093, 118 Ill.Dec. 698, 701, 522 N.E.2d 153, 156 (1 Dist.1988); *Simmons v. United States,* 805 F.2d 1363 (9th Cir.1986). This seems logical, as the psychologist would be acting within the bounds of professional treatment of his patient in misdiagnosing or mishandling one aspect of his patient's mental or emotional disorder. However, that premise is inapplicable when a psychologist actively promotes and encourages a patient to *develop* transference for the purpose of sexually exploiting that patient. Such conduct is clearly beyond even the pretext of the rendering of professional services.

[¶ 51] In their complaint, plaintiffs allege defendant Lenz never intended to counsel plaintiffs to improve their marital relationship, and in fact his conduct was intended to seduce Linda and to entice Linda from her husband. These allegations present a question of fact as to whether defendant Lenz acted with the intent to encourage Linda to develop transference and then turned that transference to his own purposes.

### CONCLUSION

[¶ 52] The profession of psychology falls within the definition of "practitioners of the healing arts," and thus I would hold the trial court's dismissal of the causes of actions alleging malpractice was proper. However, I believe it is necessary to differentiate between mishandling or misdiagnosing a problem a patient develops while undergoing

---

**7.** This statute has since been revised to define "the practice of psychology" as:

> [T]he observation, description, evaluation, interpretation, and modification of human behavior by the application of psychological principles, methods, and procedures for the purpose of preventing or eliminating symptomative, maladaptive, or undesired behavior and of enhancing interpersonal relationships, work and life adjustment, personal effectiveness, behavioral health, and mental health.

> The term includes psychological testing and evaluation or assessment of personal characteristics ...; *diagnosis and treatment of mental and emotional disorders or disabilities, compulsive disorders, disorders of habit or conduct* as well as of the psychological aspects of physical illness, accident, injury or disability ...

Because this case was filed before adoption of this definition, the prior definition applies to this case. However, application of this definition would not alter my conclusions.

treatment, and encouraging and promoting a patient to develop a condition so as to use that condition to one's personal advantage. I would therefore reverse the trial court's dismissal of those causes of action based on intentional acts of Richard Lenz which were not related to treatment of Linda's condition. I concur in the majority's decision as to Issue Two.

GILBERTSON, Justice (dissenting on Issue I and concurring on Issue II).

## ISSUE I

[¶ 53] I generally join in the dissent of Justice Sabers. However I do not think it necessary to revisit the propriety of the holding of *Richards v. Lenz*, 539 N.W.2d 80 (S.D.1995), as the facts therein are substantially different than the facts now before us. Whether the holding in *Richards* survives or is reversed should await a day when the issue is again whether marital counseling by a psychologist comes within the statutory definition of a "practitioner of the healing arts." *See* SDCL 15–2–14.1 and SDCL 36–2–1(3).[8]

[¶ 54] The issue before us is whether the facts of this case are governed by SDCL 15– 2–14.1. The trial court made this quite clear in its Memorandum Opinion:

[T]he gravamen of the complaint alleges that Defendant Lenz failed to properly discharge his professional duties which resulted in their damage. Thus, these claims essentially allege medical malpractice. The statute of limitations as set forth in SDCL 15–2–4.1 pertains to a "practitioner of the healing arts" and applies "whether based upon contract or tort." "Healing art" includes mental condition. See SDCL 36–2–1(3).... Accordingly, SDCL 15–2–14.1 applies and there is a two year statute of limitations in the action against Lenz. (Citations omitted.)

[¶ 55] Here, Linda Rehm was not treated with counseling for marital problems which can have as its source such non-medical origins as financial problems, religious differences, work habits, temperament and the like. Rather, she was treated for depression. Unfortunately she was not just having a bad day. She was hospitalized for depression so severe that it had in the past and would later manifest itself with suicidal threats.[9] While in the hospital, Linda Rehm was being treat-

---

8. I respectfully disagree with the majority's argument that the distinction between this case and *Richards* is not properly before us. Lenz filed his Appellee's brief before *Richards* was released by this Court. Rehms, in their reply brief, had the advantage of reading *Richards* and argued that it was controlling rather than distinguishable. Lenz got no chance to argue to the contrary as the request for oral argument was turned down. Lenz made one last attempt to argue *Richards* was distinguishable when on January 26, 1996 he petitioned this Court for leave to file a supplemental brief addressing that very subject. His request to file such a brief was denied by this Court.

To now suggest that the issue of the application of SDCL 15–2–14.1 is not properly before us when applied to the facts of this case, is to ignore the direct holding of the trial court and slams the door in the face of Lenz who tried to raise the distinction issue as soon as he was aware of *Richards*. It certainly is a Catch–22 situation for Lenz to be told that he cannot now attempt to distinguish *Richards* because he never raised the issue (1) due to his inability to predict the future and, (2) when *Richards* was issued, he could not raise it because this Court would not let him. Reduced to its essence, the majority would have us hold that Lenz loses not on the merits of the legal argument applied to the facts of this case, but rather because *Richards* is controlling even if

wrongly decided, as is forcefully argued by Justice Sabers, and even if factually distinguishable as is argued by this writer, simply because the distinction issue was never briefed by Lenz even though it could not be.

I believe the trial court correctly decided the issue. That aside, we have consistently affirmed a summary judgment even where the trial court reached the right result but for the wrong reason. *See Kehn v. Hoeksema*, 524 N.W.2d 879, 881 (S.D.1994) and cases cited therein. What should be directly on point here is that we have also consistently held a summary judgment will be affirmed if there exists ANY basis which would support the trial court's ruling. *See St. Paul Fire & Marine Ins. v. Schilling*, 520 N.W.2d 884, 886 (S.D.1994).

9. Linda Rehm's struggle with depression has been long and severe. She was hospitalized for it at Rapid City Regional Hospital for two weeks commencing January 5, 1987. She was hospitalized a second time at Sioux Valley Hospital in Sioux Falls for one month from May 23, 1988 to June 17, 1988. Her condition resulted in a third hospitalization at Rapid City Regional Hospital commencing July 19, 1988, just one month following her discharge from Sioux Valley Hospital. She described her need for this treatment as, "I usually went to the hospital when I felt suicidal."

ed for her condition with prescription medication. She was subsequently referred to West River for further treatment upon her release from the hospital.[10]

[¶ 56] Dorland's Illustrated Medical Dictionary (25th Ed 1974) defines depression as "a psychiatric syndrome consisting of dejected mood, psychomotor retardation, insomnia, and weight loss, sometimes associated with guilt feelings and somatic preoccupations often of delusional proportions."

[¶ 57] While we have not had previous occasion to directly address the nature of the condition, most recently we dealt with its effects on a person. In *State v. Engelmann*, 541 N.W.2d 96 (S.D.1995), Engelmann's depression was described by a psychologist as "a serious mental illness; people suffering from it simply cannot make rational decisions." *Id.* at 99. In allowing Engelmann to withdraw his guilty plea we concluded:

> A diagnosis of 'Severe Depressive Episode,' a recognized mental disorder, reduced Engelmann's decision-making ability. Even the State's psychiatrist, though he disagreed with the depth of Engelmann's impairment, was unable to dispute this diagnosis, but confirmed Engelmann's blunted thought processes and diminished mental clarity.

*Id.* at 103. To me this describes an "unhealthy ... mental condition" as set forth in SDCL 36-2-1(3) which defines "healing art." Rehms sought treatment from Lenz as a practitioner of this healing art, who is subject to the two-year statute of limitations under SDCL 15-2-14.1.

[¶ 58] Like Justice Sabers, I conclude a fair reading of the complaint sounds in a cause of action for malpractice whether it uses that explicit word or not. Paragraph VII, of Count I of that pleading states:

> By Defendant Lenz's actions, he was negligent in failing to exercise a degree of reasonable skill and care with the degree of knowledge and expertise ordinarily exercised by other psychologists in this and other like localities. Defendant Lenz ne-

glected to heed Plaintiffs' mental and emotional conditions, departed from accepted practices and procedures in the services rendered, failed to follow good psychological practices, performed contraindicated procedures on the Plaintiffs, and failed to provide necessary indicated procedures.

The allegations of the Rehms involve treatment for depression with suicidal tendencies. This leads me to the conclusion that the nature of the complaint is an action for malpractice within SDCL 15-2-14.1.

[¶ 59] Thus I would affirm the trial court's granting of summary judgment on issue one. Under the facts of this case a two-year statute of limitations may seem harsh. However the wisdom of such a statute is the domain of the Legislature and not this Court.

### ISSUE II

[¶ 60] As to issue two, I join with the rationale of the majority. Lenz and West River did not file a notice of review concerning the applicability of the two-year malpractice statute of limitations to this action rather than the three-year statute of limitations adopted by the trial court.

---

10. Linda Rehm claims to have viewed Lenz's file on her after Lenz left West River. Although it cannot be verified by the record, according to Linda, Lenz's diagnosis of Linda was anorexia nervosa and obsessive.