1999 SD 32

**David WERNKE, Appellant,**

v.

**STATE of South Dakota, DEPARTMENT OF SOCIAL SERVICES, Employer and Appellee,**

and

**South Dakota Department of Labor, Appellee.**

No. 20566.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1999.

Decided March 17, 1999.

Patricia de Hueck, Pierre, SD, for appellant.

Brent Wilbur of May, Adam, Gerdes & Thompson Pierre, South Dakota, for employer and appellee Department of Social Services.

Drew C. Johnson Special Assistant Attorney General Aberdeen, South Dakota, for appellee Department of Labor.

TAPPE, Circuit Judge.

[¶1.] David Wernke (Claimant) appeals from a judgment of the trial court, which affirmed the decision of the Department of Labor to deny him unemployment compensation benefits. We reverse.

## FACTS AND PROCEDURAL HISTORY

[¶2.] The findings of fact of the Administrative Law Judge (ALJ) adequately set forth the facts and are listed verbatim below:

1. Claimant worked for Employer as a quality control specialist from January 28, 1988, to September 12, 1997.

2. Employer provides assistance to people to help weatherize their homes. Employer has non-profit corporations do the weatherizing. Claimant's job was to monitor the records of the non-profit corporations.

3. People who are receiving assistance from Employer are called clients.

4. Claimant knew and understood that he was not to socialize with clients. Clients of the Employer tend to be vulnerable people and socializing can create liability problems for Employer.

5. On or about August 5, 1997, Claimant was inspecting a house that had been designated for the weatherization program. The client's name was Petra Hentschell (Petra). Her home was located in Ashton, South Dakota.

6. Claimant normally did not visit houses, rather, he visited the non-profit corporations.

7. Claimant was staying at the Super 8 Motel in Aberdeen that evening.

8. At approximately 7:00 p.m., Claimant was at a bar in Ashton, South Dakota. He saw Petra's son in the bar and asked him if his mother was at home. Her son did not know.

9. Claimant then drove to Petra's house and opened the door to see if anybody was at home. It appeared that nobody was home.

10. Claimant left a note on Petra's door that stated, "Dave Wernke–Housing Inspector–Petra, Super 8 Motel Room 150, 2405 SE 6th, 229–5005, Please call 280–3166 or above-I would like to ask you something."

11. Later that evening, Petra called Claimant and he asked her to go have a drink with him. She declined his offer.

Claimant then said that he would be back in Ashton on August 6, 1997, (the next night) and asked Petra if she wanted to have a drink that night. Again, Petra declined his offer.

12. Petra reported Claimant's behavior to Employer.

13. *Employer terminated Claimant for attempting to socialize with a client.*

14. Claimant filed a new claim for unemployment insurance benefits on October 9, 1997, with an effective date of September 28, 1997.

15. Claimant timely appealed a determination of the South Dakota Unemployment Insurance Division (SDUID) that concluded he was discharged for work-connected misconduct and the Employer is a reimbursing employer and is subject to charge for benefits when paid to Claimant. (emphasis added.)

[¶ 3.] The circuit court, by letter decision, affirmed the ALJ's decision. Claimant raises several issues on appeal, relating to alleged errors regarding hearsay evidence admitted over his objections. Because we reverse on other grounds, those issues need not be addressed.

## STANDARD OF REVIEW

[¶ 4.] The standard of review from decisions of administrative agencies is governed by SDCL 1–26–37, which provides that the Supreme Court shall "give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does other appeals from the circuit court." When the issue is a question of law, the agency's actions are fully reviewable, however. *Rasmussen v. South Dakota Dept. of Labor*, 510 N.W.2d 655, 657 (S.D. 1993). Whether an individual has been discharged from employment for misconduct that disqualifies him from receiving unemployment insurance benefits is a question of law, and is, therefore, fully reviewable by this Court. *Id.*

## ANALYSIS AND DECISION

[¶ 5.] Claimant is not arguing on appeal that he was wrongfully terminated from employment. He argues that the circuit court erred as a matter of law in finding work-related misconduct and that Employer failed to meet its burden in that respect. This Court has distinguished between grounds for discharge of an employee and grounds for denial of unemployment benefits. *Appeal of White*, 339 N.W.2d 306 (S.D.1983).

[¶ 6.] The reasons given by Employer for terminating Claimant's employment are not clear. Initially, upon learning of the conduct described above in the findings of fact, Claimant's supervisor, Abbie Rathbun, (Rathbun) gave him notice of her intent to terminate his employment. Rathbun stated as a reason for her intention to terminate, that the action to terminate was:

intended for just cause related to your violation of the following administrative rules:

55:01:12:05 (4) The employee has violated any department, division, bureau, or institution regulation, policy, or order or failed to obey any oral or written directions given by a supervisor or other person in authority;

55:01:12:05 (23) The employee has discriminated against another person in the course of employment or has taken wrongful actions against another person which affect the vicarious or imputed responsibility of the state or any other state employee.

[¶ 7.] At the hearing before the ALJ, Rathbun testified in response to a question regarding the reason for Claimant's termination, that his discharge was for a violation of the above state administrative rules.

[¶ 8.] Rathbun's letter of intent to terminate was more specific about the rationale behind Claimant's discharge. Passages in that letter referred to Employer's policy that " [t]he Department *expects* all employees of the Department to maintain a professional relationship with clients of the Department at all times" and that "*Exploitation* of any client of the Department of Social Services is prohibited and shall be grounds for disciplinary action." (emphasis added).

[¶ 9.] Finally, with regard to the reason for Claimant's termination, at the hearing before

the ALJ, it was learned that it is the policy of Employer that, "Socializing with a client on a personal basis *is not recommended and should be avoided.*" (emphasis added). There was no evidence or finding that this type of a violation constituted grounds for automatic dismissal.

[¶ 10.] Exploitation is defined as "[t]aking unjust advantage of another for one's own advantage or benefit." Black's Law Dictionary, Fifth ed., 1979. At most, the evidence showed Claimant may have attempted to exploit Client. There is no evidence or finding, however, that Claimant did, in fact, take "unjust advantage" of Petra to his own advantage or benefit.

[¶ 11.] Despite the variously stated reasons for termination of Claimant's employment, the ALJ found only that, "[e]mployer" terminated Claimant for attempting to socialize with a client. It is important to note that the finding of fact was only that Claimant was "attempting" to socialize with a client. It is also important to note that Employer's policy with regard to socializing with a client on a personal basis was only a warning. It was not an express prohibition on socializing with a client.

[¶ 12.] Being mindful of the foregoing grounds for termination of employment, we must now decide whether Claimant's conduct constituted work-related misconduct. SDCL 61–6–14.1 defines misconduct which would preclude Claimant's receiving unemployment benefits, as:

(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability or wrongful intent.

[¶ 13.] However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief which belief cannot be reasonably accommodated by the employer is not misconduct. SDCL 61–6–14.1.

[¶ 14.] Assuming then, that Employer did not wrongfully terminate Claimant's employment, the question is whether that termination should result in denial of unemployment benefits.

■ [¶ 15.] Unemployment statutes must be liberally construed in favor of the claimant. *Red Bird v. Meierhenry,* 314 N.W.2d 95, 96 (S.D.1982). In looking at SDCL 61–6–14.1, we must determine which, if any, of the enumerated factors would preclude Claimant from receiving compensation. Perhaps the most that can be said with regard to any applicable conduct described in that statute, is that there was a "failure to obey orders, rules or instructions," SDCL 61–6–14.1(1), in that Claimant "attempted to socialize with a client."

[¶ 16.] As indicated earlier, however, there was no order, rule or instruction prohibiting the socialization with a client. There was only a policy that warned against such socializing with a client, not an express prohibition, order, rule, or instruction. None of the remaining enumerated factors apply to this fact situation.

[¶ 17.] In the interpretation and clarifying of SDCL 61–6–14.1, we must consider the rule for determining the meaning of "workrelated misconduct" as set forth by the Washington Supreme Court in *Nelson v. Department of Employment Security,* 98 Wash.2d 370, 655 P.2d 242 (1982), and adopted by our Court in the case of *Matter of Kotrba,* 418 N.W.2d 313, 316 (S.D.1988), where the rule was quoted:

[I]n order to establish misconduct connected with an employee's work as required by [statute] the employer must show by a preponderance of the evidence that a reasonable person would find the employee's conduct: (1) had some nexus with the employee's work; (2) resulted in some harm

to the employer's interests; and (3) was in fact conduct which was (a) violative of some code of behavior contracted for between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

[¶ 18.] Applying that rule to this fact situation, it may fairly be said that the conduct did have some nexus with Claimant's work. There was no evidence, however, nor any finding by the ALJ, that Claimant's conduct resulted in some harm to the Employer's interest. Furthermore, there was no evidence or finding that the conduct was violative of some code of behavior or, for that matter, that it was done with intent or knowledge that the employer's interest would suffer. In summary, just as in *Kotrba*, while Claimant's conduct may have been reckless or a result of very poor judgment, it falls short of adequate grounds for disqualifying him from receiving unemployment insurance benefits. The ALJ committed error as a matter of law.

[¶ 19.] The decision of the trial court is reversed and remanded and the trial court shall reverse and remand the Department's decision with instructions to allow Claimant's claim for benefits.

[¶ 20.] SABERS, and AMUNDSON, Justices, concur.

[¶ 21.] GILBERTSON, and KONENKAMP, Justices, dissent.

[¶ 22.] TAPPE, Circuit Judge, for MILLER, Chief Justice, disqualified.

---

* Regulations SD Admin R 55:01:12:05(4) and (23) (1997) are consistent in that they authorized Claimant's termination from employment for cause. Unlike our recent case of *Wendell v. S.D. Dept. of Transp.*, 1998 SD 130, 587 N.W.2d 595, here Claimant did not attempt to regain his job by arguing that his termination was not for cause. Thus, we proceed from the point that Claimant's termination was properly for cause. SD Admin R 55:01:12:05(4) states as follows: The employee has violated any department, division, bureau, or institution regulation, policy, or order or failed to obey an oral or written directions given by a supervisor or other person in authority[.] SD Admin R 55:01:12:05(23) states as follows: The employee has discriminated against another person in the course of employment or has

GILBERTSON, Justice (dissenting).

[¶ 23.] I respectfully dissent. I would affirm the circuit court. I conclude that Claimant was properly denied unemployment benefits pursuant to SDCL 61–6–14.1 for employee misconduct. The Majority is in error when it concludes: (1) there was no evidence or finding that the conduct was violative of some code of behavior, and; (2) there was no evidence Claimant's conduct results in some harm to the Employer's interest.

[¶ 24.] As will be established, Claimant violated the following provisions of SDCL 61–6–14.1:

(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of a employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of the employee; *

As found by the ALJ, Claimant's conduct clearly did not fall within a "good faith error in judgment" as argued by Claimant:

Claimant knew and understood that he was not to socialize with clients. On August 5, 1997, in the early evening, he asks the client's son if his mom is at home. The son does not know, so Claimant goes to the client's home. She is not there, so he

taken wrongful actions against another person which affect the vicarious or imputed responsibility of the state or any other state employee. It was the violation of these rules that was the basis for Claimant's dismissal from his job. They are essentially the same in content as SDCL 61–6–14.1 the statute which now determines whether he is disqualified from unemployment compensation.

While there may be a distinction between grounds for discharge of an employee and grounds for denial of unemployment benefits, (*See Appeal of White*, 339 N.W.2d 306 (S.D. 1983)), here a comparison of SDCL 61–6–14.1 with SD Admin R 55:01:12:05(4) and (23) when applied to the facts of this case show there are none of relevance.

leaves her a note directing her to call him at a motel. When she calls him, he asks her out for a drink. She declines, but he does not give up. He asks her out for a drink the following night and she declines again. Claimant argues that he was only concerned about the client's basement because she was having drainage problems. However, Claimant's area of expertise is weatherization, not drainage. Claimant's argument is not credible in light of the facts. If he was concerned about the client's drainage problems, he could have called her during normal business hours. He did not have to visit her house, leave her a note directing her to call him at a motel, or ask her out for drinks. Claimant's conduct bothered the client to such an extent that she reported him to Employer. *This is not a good faith error in judgment. Claimant substantially disregarded Employer's interests.* (emphasis added).

[¶ 25.] The ALJ found, "[c]laimant knew and understood that he was not to socialize with clients." As determined by the ALJ, the reasons and importance for this prohibition are two-fold: (1) clients tend to be vulnerable people, and (2) "socializing can create liability problems for Employer."

[¶ 26.] The importance of protecting clientele seeking assistance for their homes was underscored by Abbie Rathbun, a Department Administrator, who investigated Claimant's actions and participated in the decision to terminate him for misconduct:

I do believe that it [the DSS policy] is important, and it is due to the nature of the circumstances that, that they become clients of the department in the first place. They are in many cases very vulnerable. They have low esteem and they would be more apt to be subject to abuse.

In this case, the client, Petra Hentschell was more vulnerable than most. She was a German immigrant who had limited familiarity with the English language. As the record establishes, these needy persons see the representative of the State as the person who will decide whether they get assistance for their house and if so, to what extent. Just to underscore that Hentschell got this point, when Claimant left the card at her home with the request to call him at his motel, he improperly added he was a "housing inspector" which he was not.

[¶ 27.] As noted by the ALJ, such conduct also carries negative consequences for the Employer as it may result in a lawsuit against the Employer. Clearly, it is against the Employer's interests to be sued with the potential of paying off a substantial judgment. It also results in damage to a governmental entity's public image. Thus, the claim of the Majority that there was no finding by the ALJ that Claimant's conduct could result in some harm to Employer's interest is simply wrong.

[¶ 28.] SDCL 20–13–24 makes it an unfair or discriminatory practice to provide adverse or unequal treatment for public services based on sex. Under SDCL 20–13–1(13) a public service includes any department program managed by the State of South Dakota. Violation of these provisions can result in a suit for damages. SDCL 20–13–35.1. "[A]ctual or constructive notice of harassment and failure to take remedial steps to end it is the standard for employer liability." *Huck v. McCain Foods*, 479 N.W.2d 167, 170 (S.D. 1991) (citing *Hall v. Gus Const. Co., Inc.*, 842 F.2d 1010, 1016 (8thCir.1988)).

[¶ 29.] The Majority takes the unjustified position that no misconduct by exploitation occurred as there was only an "attempt" at socialization because Hentschell turned down Claimant's offer. Under this rationale, Claimant could repeatedly solicit every woman in the State with no violation of the applicable standard as long as his offers were refused. Under SDCL 20–13–1(16) an unfair or discriminatory practice based on sex includes "act or *attempted* act" which adversely affects public services. (emphasis added). This is also logical from the client's point of view, as the client may feel a denial of the offer of socialization will have a negative effect on their request for weatherization assistance. Under the Majority rationale, those that need the protection the most, those that have turned down the socialization offer, are not protected from retaliation; but, those that run no risk of retaliation by the employee because they have accepted the socialization offer, are fully protected from retaliation that will never occur.

[¶ 30.] The Human Relations Act of SDCL ch 20–13 is not an exclusive remedy. In

*Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419 (S.D.1994) although there was a Human Relations Consent decree between the parties, we allowed claims of intentional infliction of emotional distress and invasion of privacy to go to the jury by female employees against a "peeping-Tom" boss and his corporate employer. While the facts in *Kjerstad* are admittedly more outrageous than those now before us, the potential for recovery of compensatory and punitive damages against the employer for sexual misdeeds of an employee would certainly give the employer justified cause to prohibit on the job socialization with clients which could lead to sexual solicitation and conduct by employees.

[¶ 31.] In *Rehm v. Lenz*, 1996 SD 51, 547 N.W.2d 560, an employer was sued for negligence, breach of fiduciary duty, fraud and deceit, breach of contract and punitive damages for sexual advances and a resulting relationship purportedly initiated by one of its counselors with a client. *See also Richards v. Lenz*, 539 N.W.2d 80 (S.D.1995).

[¶ 32.] Most recently in *Wiest v. Montana*, 1998 SD 63, 580 N.W.2d 613, we reversed a grant of summary judgment and held that tort claims based on sexual harassment are appropriate for resolution by the jury.

[¶ 33.] In conclusion I respectfully disagree with the rationale of the Majority. There was admitted evidence by Claimant of misconduct that is in clear violation of SDCL 61–6–14.1(1), (2) and (3) as found by the ALJ and affirmed by the circuit court. There was harm from Claimant's conduct in that it resulted in damage to Employer's interests in the nature of potential litigation and its public image as a reliable source of assistance to citizens in need. The conduct also created a chilling effect on those less fortunate citizens of this State who petition government for help to meet the basic needs of everyday survival, such as housing and expect it to come without such a dubious price-tag.

[¶ 34.] KONENKAMP, Justice, joins this dissent.